# DEPARTMENT OF BUSINESS REGULATION, etc. v REAL ESTATE RENTALS, INC., d/b/a IPPOLITO APARTMENTS

## Case No. 86-1800

State of Florida, Division of Administrative Hearings

October 9, 1986

### APPEARANCES OF COUNSEL

**Lynne A. Quimby,** Department of Business Regulation, for petitioner.

**Emilio L. Ippolito** for respondent.

### OPINION

DIANE A. GRUBBS, Hearing Officer.

### *RECOMMENDED ORDER*

Pursuant to notice, a hearing was held in this cause, on June 27,

1986, in Tampa, Florida, before Diane A. Grubbs, a hearing officer with the Division of Administrative Hearings.

## ISSUES

Whether respondent committed the violations alleged in the Notice to Show Cause, and if so, whether its license should be revoked or suspended, or whether a civil penalty should be imposed.

## BACKGROUND

On March 27, 1986, the Department of Business Regulation, Division of Hotels and Restaurants, issued a Notice to Show Cause and a Notice of Informal Conference which alleged that inspections of respondent's property had been made on three separate dates and that several violations of Florida Statutes and administrative rules had been found. The Notice to Show Cause listed the violations as follows:

1. Failure to provide adequate number of fire extinguishers properly serviced and tagged. 7C-1.04(1).

2. Failure to maintain windows in good repair. Examples cited include window in apartment #1 facing the street and bathroom window in apartment # 2. 7C-1.03(1)

3. Failure to maintain stairs in good repair 7C-1.03(1), 7C-1.04(3).

4. Failure to supply screens for all windows. Some were missing. 7C-1.03(1)(3)

5. Failure to maintain plumbing in good repair. Water from upstairs was leaking into apartment #1. 7C-3.01(1).

6. Failure to maintain interior of building in good repair. 7C-1.03(1)

The Notice of Informal Conference advised respondent that a conference would be held on April 18, 1986, and that if the case could not be resolved at the informal conference, respondent had a right to request a formal hearing on the charges. On May 6, 1986, the respondent filed a Demand for Formal Hearing, and on May 16, 1986, the matter was referred to the Division of Administrative Hearings for further proceedings.

At the hearing, the petitioner presented the testimony of Barbara Detrichsen, the District Director of the Division of Hotels and Restaurants, and Pablo Mercado, a Health and Environmental Specialist with the Division of Hotels and Restaurants. Petitioners Exhibits 1-6 were admitted into evidence. The respondent presented the testimony of Barbara Detrichsen and Bobby Howell, the maintenance man for the Ippolito Apartments.

Both parties timely filed proposed findings of facts and conclusions of law, and a ruling on each proposed finding of fact has been made in the appendix to this recommended order.

## FINDINGS OF FACT

(1) At all times relevant to this cause, Real Estate Rentals, Inc. held license number 39-926-H issued by the Department of Business Regulation, Division of Hotels and Restaurants (Division) for the premises known as Ippolito Apartments located at 112 South Brevard Avenue, Tampa, Hillsborough County, Florida. The president of Real Estate Rentals, Inc. is E. L. Ippolito.

(2) On February 27, March 14, and March 25, 1986, Pablo Mercado inspected the Ippolito Apartments. Mr. Mercado is employed by the Division as an Environmental Health Specialist and his duties include the inspection of hotels, apartments, and other buildings. Mr. Mercado inspects between 40 and 50 buildings a week. Each building is routinely inspected four times a year.

(3) When Mr. Mercado inspected the Ippolito Apartments on February 27, 1986, he found several conditions which he considered to be statutory or rule violations. Mr. Mercado noted these violations on a standard form of the Division. The Division's form lists various items numbered 1-36. Items 1 (Fire Extinguishers), 5 (Fire Hazards), 11 (Building Repair/Painting), and 19 (Screening) were checked on the form as minor violations, and comments were made concerning each item. As to Item 1, Mr. Mercado noted that no fire extinguishers were in the building and that a fire extinguisher was needed on each floor or one in each apartment. As to Item 5, Mr. Mercado noted that furniture needed to be removed from the hall. As to Item 11, Mr. Mercado made the following comments:

Need window facing st. apt. #1. You need a window in bathroom apt. #1. Paint inside bldg. Stairs need repair. Hole in bathroom floor apt. #3. Water leaking in the bathroom from the upstairs apt. into apt. #1.

As to Item #19, Mr. Mercado noted that all the screens missing on the windows had to be replaced. The form was sent to Real Estate Rentals, Inc., with the indication that the document was a warning and that all violations had to be corrected by March 14, 1986.

(4) When Mr. Mercado made his inspection on February 27, 1986, he did not observe a hole in the bathroom floor in apartment #3 or observe any water leaking into the bathroom in apartment #1, and there was no competent evidence presented at the hearing to establish

234

that either of these conditions existed. Mr. Mercado did observe that there were no fire extinguishers in the hall, and he did go into one apartment and observed that there was not a fire extinguisher in that apartment. Two other tenants informed him that they did not have a fire extinguisher in their apartments. Mr. Mercado observed that one of the windows facing the street contained no window pane but simply had a plastic bag taped over the window frame on the outside of the building to cover the empty space. On other window jalousie slats missing, and the window on the bathroom of apartment #1 was covered with a piece of plywood. Some screens were missing and some screens were torn up. One of the steps on the stairs was missing part of the two-inch lip, which created a hazard to individuals using the stairs.

(5) On March 14, 1986, Mr. Mercado made a return inspection. He noted that the furniture had been removed from the hall. However, he did not feel that any of the other violations listed had been corrected. Therefore, Mr. Mercado filled out a "Call Back/Re-Inspection Report", which referred to the warning issued on February 27, 1986, and made the following comments:

Violations: #1—#5—#11—#19 (See DBR-226) Only violation # 5 is complied. The rest of the violations #1, #11, #19 are not complied.

The report indicated that the time to correct the violations had been extended to March 24, 1986. This report was sent to the respondent by certified mail.

(6) On March 25, 1986, Mr. Mercado again inspected the Ippolito Apartments. The conditions had not changed from the time of his previous inspection on March 14, 1986.

(7) Mr. Mercado visited the Ippolito Apartments again on April 7, 1986, and also on June 10, 1986. The pictures admitted into evidence as petitioner's exhibits No. 6 were taken on June 10, 1986. On June 10, 1986, the building was in the same condition as it had been on February 27, March 14, and March 25, 1986, except that several of the windows on the front of the building had been replaced with plywood boards. Mr. Mercado did not believe that the replacement of the windows with the boards corrected the violation as to the windows, but he could not remember whether the windows had been replaced with the plywood as of March 14th or the March 25th inspection, or whether they were replaced at a later time. Since slats were still missing from other windows on all of his inspections, he did not feel the violations as to the windows had been corrected.

(8) By June 10, 1986, the windows in front of the apartment had

**235**

been replaced with plywood backed by 2 × 4 studs. According to Mr. Howell, who performed the work, the replacement of the windows with the plywood structure occurred approximately 2½ months prior to the hearing, which would have been early or mid-April, 1986. In that the only competent evidence as to the date of the replacement of the front windows was Mr. Howell's testimony, it is found that the windows in the front of the building had not been replaced with plywood at the time of Mr. Mercado's inspections on March 14 and March 25, 1986. There was no competent evidence presented as to the condition of the windows in the front of the building on March 14 or March 25, 1986.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the subject matter of and the parties to this proceeding. Section 120.57(1), *Florida Statutes*.

Subsection 509.261(1), *Florida Statutes*, provides that the Division may suspend or revoke the license of any public lodging establishment that violates any of the provisions of Chapter 509 or the rules of the Division. Subsection 509.261(2), *Florida Statutes*, provides that, in lieu of suspension or revocation, the Division may impose a fine of up to $500 for each offense.

The Notice to Show Cause alleges violations of Sections 509.211(3) and 509.221(1), (2) and (8), *Florida Statutes*, along with various violations of Chapter 7C, *Florida Administrative Code*.

Section 509.211(3) provides that the Division shall enforce rules adopted by the State Fire Marshal. This provision is a legislative directive to the Division; therefore, respondent cannot be in violation of Section 509.211(3). Section 509.221(1), provides that each public lodging establishment shall be equipped with suitable toilets, and Section 509.221(8) provides that all flies must be kept out of any public lodging establishment. There was no evidence presented that respondent was in violation of either of these provisions.

Section 509.221(2), *Florida Statutes*, provides as follows:

Each public lodging establishment, shall be properly plumbed, lighted, heated, cooled, and ventilated . . . and such proper ventilation or cooling shall be construed to mean at least one door and one window in each room.

Rule 7C-1.031(1), *Florida Administrative Code*, provides that "[r]oofs, walls, ceilings, floors, stairs, steps, windows . . . shall be kept in good repair. . . ."

At the time of the first inspection on February 27, 1986, the

bathroom window on apartment #1 was covered with a board, and one of the windows in apartment #1 was missing and the frame covered with a plastic bag. Respondent was given a warning and advised that windows were needed in those locations. Subsequent inspections were made on March 14th and March 25th. There was insufficient evidence presented to determine the condition of the window at the time of the subsequent inspections in apartment #1 facing the street. Mr. Mercado could not recall the condition of the front windows at the time of his inspections on March 14th and 25th and, although Mr. Howell testified that slats were missing from the jalousies at the time he replaced the windows with a plywood structure, the replacement of the windows did not occur until after the March 25th inspection. However, the evidence established that the bathroom window was never replaced. It remain boarded at the time of the March 14th and March 25th inspection. Therefore, respondent violated Rule 7C-1.03(1), *Florida Administrative Code*, by failing to keep the windows in its establishment in good repair.

Respondent was also charged with violating Rule 7C-1.03(1) by failing to maintain the stairs in good repair. The evidence established that one of the steps on the stairs created a hazard because a portion of the step was missing. The step was not repaired by the time of the subsequent inspections on March 14th and 25th. Respondent argues that if the stairs are functional and can be used they are in good repair. This argument is without merit. The portion of the stair that was missing clearly could not be used, and therefore the stairs were functional only by avoiding the defective step. The rule requires that stairs be kept in "good repair." When a portion of a step is missing, creating a hazard to those who use the stairs, it cannot be concluded that the stairs are in good repair. Respondent, therefore, is in violation of Rule 7C-1.03(1), *Florida Administrative Code*, by failing to maintain the stairs in its establishment in good repair. Although respondent was also charged with violating Rule 7C-1.04(3), *Florida Administrative Code*, due to the condition of the stairs, the evidence presented does not establish a violation of that rule.

Respondent is charged with violation Rule 7C-1.04(1), *Florida Administrative Code*, by failing to provide an adequate number of fire extinguishers properly serviced and tagged. Rule 7C-1.04(1)(a) provides that there shall be a fire extinguisher for each 3,000 square feet or less of floor space and that the maximum travel distance to the nearest fire extinguisher shall be no more than 75 feet. Rule 7C-1.04(1)(b) provides:

In the event it is determined by the Director that it is impossible for

**237**

a lodging establishment to maintain fire extinguishers in a public hallway or near the head of the stairs without repeated replacement . . . then pursuant to an order of the Director, the establishment shall maintain one ABC extinguisher in each apartment or room.

The evidence established that respondent did not have any fire extinguishers in the public part of the building and fire extinguishers were not located in all the apartments on any of the three inspections. Respondent, therefore, was in violation of Rule 7C-1.04(1), *Florida Administrative Code*.

Respondent is charged with violating Rule 7C-1.03(1) and (3), *Florida Administrative Code*, by failing to supply screens for all windows. Rule 7C-1.03(1) provides that windows shall be kept in good repair. Windows are not in good repair when appropriate screening is missing. On all three inspections some windows were without any screen and others had inadequate screening. Therefore, respondent was in violation of Rule 7C-1.03(1), by failing to supply appropriate screens for all windows. Rule 7C-1.03(3), provides that "[i]nsects, vermin . . . etc., shall be kept exterminated." The failure to supply screens for all windows does not establish a violation of Rule 7C-1.03(3), *Florida Administrative Code.*.

Respondent is charged with failing to maintain plumbing in good repair, in violation of Rule 7C-3.01(1), *Florida Administrative Code*, due to water leaking into apartment #1. There was no competent evidence presented to establish that any water was leaking into apartment #1 or that respondent failed to maintain the plumbing in good repair. Therefore, respondent was not in violation of Rule 7C-3.01(1), *Florida Administrative Code*.

Respondent is also charged with failing to maintain the interior of the building in good repair in violation of Rule 7C-1.03(1), *Florida Administrative Code*. The charge does not state specifically how the interior of the building was defective. However, the specific violation listed by the inspector indicates that there was a hole in the bathroom floor in apartment #3. There was no competent evidence to support this charge. Although there was evidence presented that there was a hole in the wall by the stairs at the time of the inspections, the respondent was never notified of this condition or that the condition was in violation of the Division rules. In that there was no competent evidence of any hole in the bathroom floor in apartment #3, and in that respondent was not charged with a violation based on a hole in the wall, respondent is not in violation of Rule 7C-1.03(1) by failing to maintain the interior of the building in good repair.

238

## *RECOMMENDATION*

Based on the foregoing findings of fact and conclusions of law, it is

RECOMMENDED that petitioner enter a final order finding respondent guilty of three violations of Rule 7C-1.03(1) and one violation of Rule 7C-1.04(1) on February 27, March 14 and March 25, 1986, as set forth in charges 1 through 4 of the Notice to Show Cause; finding respondent not guilty of the violations set forth in charges 5 and 6 of the Notice to Show Cause; and imposing a total civil penalty of $975 assessed as follows: (1) failure to provide adequate fire extinguishers, $100 for each offense for a total of $300; (2) failure to maintain windows in good repair, $100 for each offense for a total of $300; (3) failure to maintain stairs in good repair, $50 for each offense for a total of $150; (4) failure to maintain screens in good repair, $75 for each offense for a total of $225.

DONE and ENTERED this 9th day of October, 1986, in Tallahassee, Florida.